IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Alton D. BROWN,                   :    CIVIL ACTION
                                  :    NO. 13-00465
         Plaintiff,               :
     v.                           :
                                  :
Jeffrey A. BEARD, et al.          :
                                  :
         Defendants.              :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                            May 5, 2021


## I.    INTRODUCTION

Pro se Plaintiff Alton Brown brings this prisoner civil
rights action under 42 U.S.C. § 1983, alleging violations of the
First and Eighth Amendments.[1] He names two groups of Defendants.
The "Commonwealth Defendants" are: John Wetzel (Secretary of the
Pennsylvania Department of Corrections),[2] David DiGuglielmo
(Superintendent at SCI-Graterford), Dorina Varner (Chief
Grievance Coordinator), Scott Williamson (Deputy
Superintendent), John K. Murray (Deputy Superintendent), George

---

[1]    Brown's Complaint also alleges violations of his Fourteenth Amendment
rights. See Compl. ¶¶ 51, 53, ECF No. 1-46. However, the substance of Brown's
Complaint and his subsequent briefing indicates that his chief allegations
involve unconstitutional conditions of confinement, denial of medical care,
and retaliation for complaining of those alleged conditions. The Court
therefore presumes that Brown invoked the Fourteenth Amendment not as a
separate cause of action, but because the Amendment incorporates his First
and Eighth Amendment rights against the Commonwealth.

[2]    In April 2014, the Court granted Brown's motion to substitute Wetzel as
a Defendant in place of Jeffrey A. Beard. See Order (Apr. 7, 2014), ECF No.
146.

Hiltner (Maintenance Manager), Julie Knaver (Corrections Health
Care Administrator), Myron Stanishefski (Corrections Health Care
Administrator), John Day (Unit Manager), and D. White
(Lieutenant). The Complaint also names William Banta (Unit
Manager) as a Commonwealth Defendant, but Banta was not served
with original process and will therefore be dismissed from this
action.[3] The "Medical Defendants" are Prison Health Services,
Inc. ("PHS") and Felipe Arias, M.D.

Brown alleges the Defendants subjected him to
unconstitutional conditions of confinement, retaliated against
him, and denied him medical care. Both groups of defendants now
move for summary judgment. For the reasons set forth below, the
Commonwealth Defendants' Motion for Summary Judgment will be
denied. The Medical Defendants' Motion for Summary Judgment will
be granted as to the issue of Monell liability only and denied
as to all remaining issues.

## II.  BACKGROUND

### A.  __Factual History__[4]

The instant action arises from Brown's incarceration at the
State Correctional Institute at Graterford. Brown was

---

[3]     The docket from the Western District action indicates that service was
returned unexecuted for Banta. See Docket No. 18, 10-1398 (W.D. Pa.), ECF No.
1 at 7; see also Comm. Defs.' Mot. Summ. J. 1 n.1, ECF No. 157 ("Defendant
William Banta has not yet been served with original process in this case.").

[4]     As required at the summary judgment stage, the Court views these facts
"in the light most favorable" to the nonmoving party and draws "all

transferred to Graterford in January 2006 and imprisoned there until his transfer to SCI-Smithfield in July 2013. While at Graterford, Brown was housed on J-Block in the Restricted Housing Unit. J-Block had no open windows, and its cells had no air conditioning. Heating units and air ducts were located in common areas.

J-Block had both "open" and "closed" cells. The open cells were enclosed by bars, while the closed cells were completely enclosed, with plexiglass and steel covering the front of the cell. Brown spent approximately fifty percent of his nearly eight years at Graterford in closed cells.

Both types of cells had two air vents: one on the floor and one near the ceiling. The Commonwealth Defendants describe those vents as "a fire smoke vent and a return vent" and state that "the bottom return vent allows for air to be drawn into the cell and out through the return vent." Comm. Defs.' Answer ¶ 23, ECF No. 123. Brown states that during his eight years in J-Block, "the two (2) vents in the cells he was housed in were both used as exhaust vents." Pl.'s Suppl. Resp. Comm. Defs.' Mot. Summ. J. 17, ECF No. 206.

Brown alleges J-Block's ventilation system was inadequate. He filed multiple grievances challenging these conditions during

reasonable inferences" in that party's favor. <u>Young v. Martin</u>, 801 F.3d 172, 174 (3d Cir. 2015).

the two years before his Complaint in this action was filed
(i.e., between October 22, 2008, and October 22, 2010),
including at least the following:

| Date/ Grievance # | Complaint | Result |
|---|---|---|
| November 3, 2008<br><br>(#249155) | Brown alleged that staff cut off the floor vent and ceiling vent on the wing for the sole purpose of harassment. He stated staff had been playing games with the air flow on the block. | Denied. The response stated that the system was temporarily turned off on the day in question because a contractor had been working on the environmental controls.<br><br>Brown filed an appeal to the superintendent, which was denied. |
| December 30, 2008<br><br>(#256289) | Brown stated that vents in his unit had been turned off for approximately ten days. He stated that staff were aware of the fact that he suffered greatly from dust and smoke when the vents were cut off, and that he believed ventilation was cut off as a means of retaliating against him. | Denied. The response states that staff checked the system and determined it was operating properly.<br><br>Brown appealed to the superintendent, who upheld the initial response.<br><br>He then filed a final appeal, which was denied. |
| July 28, 2009<br><br>(#282716) | Brown stated that the top vent in his cell had been off for many months and that the bottom vent had recently been turned off, and that his lack of ventilation was impacting his health. | Resolved. The response stated that the system had been down due to a tripped smoke detector, was reset, and was properly working. |
| November 3, 2009<br><br>(#295074) | Brown stated he was having great difficulty breathing and was being denied medical care. He stated that his illness was aggravated by the lack of circulation and extreme heat in his unit. He also stated that he was seen by a medical staff person on October 29, 2009, who conducted no tests and ignored his complaints. | Denied. The response stated that he had not signed up for sick call with any complaint of trouble breathing.<br><br>Brown appealed to the superintendent, who denied his appeal after determining Brown failed to substantiate that he was being denied medical care. |

| | | Brown then filed a final appeal, which was denied on the basis that the medical care had been reasonable and appropriate and there was no record of a sick call since November 17, 2009. |
|---|---|---|
| December 15, 2009<br><br>(#300107) | Brown stated that the floor exhaust had been cut off and that there was no air circulation, aggravating his pre-existing illnesses. | Denied. The response stated that the air handlers were shut down for approximately one hour at the direction of the facility maintenance manager.<br><br>Brown filed an appeal to the superintendent, which was denied.<br><br>He then filed a final appeal, which was denied. |
| October 13, 2010<br><br>(#339210) | Brown stated that his floor exhaust had been disconnected, that his cell was dusty and lacked ventilation, and that these conditions had immediate effects on his breathing and lungs. The grievance also stated that he had a chronic lung problem, and that staff were retaliating against him for filing grievances. | Resolved. The response stated that a staff member investigated the issue, found the duct work disconnected, and reconnected it.<br><br>Brown appealed to the superintendent, claiming the vent was still broken. The appeal was denied.<br><br>He then filed a final appeal, which was also denied. |
| October 19, 2010<br><br>(#340582) | Brown stated that he was denied medical care for his breathing problem, had lung pain, and was coughing up blood. The grievance stated that a staff member would recommend placing a fan in front of his cell, but that the plexiglass enclosing the cell would render the fan ineffective. | Denied. The response stated that staff placed the barrier in front of the cell for security reasons.<br><br>Brown appealed to the superintendent, who denied the appeal.<br><br>He then filed a final appeal, which was denied. |
| November 2, 2010 | Brown complained that he was denied medical care on October 21, 2010, in response to a sick call in which he | Rejected. The rejection form stated that the grievance did not |

| (#341631) | stated that he needed oxygen. He stated his lack of ventilation in his cell impacted his lung conditions, and that he was having difficulty breathing and was coughing up blood. | indicate that Brown was personally affected by a department or facility action or policy. Brown filed an appeal to the superintendent, which was rejected. He then filed a final appeal, which was dismissed. |

Comm. Defs.' Mot. Summ. J. Exs. D-K, ECF No. 157-2.

Brown avers that he filed more grievances challenging the conditions of his confinement during this timeframe, but that at least some of those grievances were unavailable to him when he prepared his responses to the instant motions "due to Defendants' failure to comply with this Court's discovery order." Pl.'s Suppl. Resp. Comm. Defs.' Mot. Summ. J. 5, ECF No. 206; id. at 17 ("As Plaintiff has already informed the court, there are other grievances in his property that Defendants and/or their agents ha[ve] denied him access to.").

Brown alleges the poor ventilation caused him to breathe dirt- and dust-filled air, damaged his lungs, and caused him pain. In September 2010, he had a chest x-ray with the impression of suspected underlying chronic obstructive pulmonary disease (COPD). He argues the conditions of his confinement contributed to his developing the disease. Brown also claims the Defendants retaliated against him for filing grievances by worsening his living conditions and denying him medical care.

**B.  Procedural History**

Brown filed this action in the Western District of Pennsylvania in 2010. The Western District transferred the case to this district in 2013, and the Court referred the matter to U.S. Magistrate Judge Rueter for pre-trial purposes.

In this Court, all Defendants filed motions to dismiss for failure to state a claim. See Defs.' Mots. Dismiss, ECF Nos. 8, 12. They argued, inter alia, that Brown's claims were barred by the applicable statute of limitations. Judge Rueter determined that the Court "[did] not have sufficient facts to determine whether the continuing violations doctrine should apply to plaintiff's claims and whether plaintiff's Complaint was timely filed within the two-year statute of limitations." See Order (Apr. 17, 2013), ECF No. 21. He therefore ordered limited discovery on the dates in which the alleged acts occurred, the dates on which Brown became aware of the conditions complained of, and the dates when Brown knew or should have known of the alleged injuries. See Order (Apr. 17, 2013).

After engaging in limited discovery, both groups of Defendants filed motions for summary judgment arguing the statute of limitations barred Brown's claims. See Defs.' Mots. Summ. J., ECF Nos. 44, 49. On the record before him, Judge Rueter concluded that Brown's claims accrued well before the beginning of the limitations period, and he therefore

recommended granting the motions. <u>See</u> R. & R., ECF No. 103.
Brown filed objections. <u>See</u> Pl.'s Objs. R. & R., ECF No. 115.

Upon review of the Report and Recommendation and Brown's
objections, the Court concluded that the statute of limitations
barred some, but not all, of Brown's claims. The Court granted
the Defendants' motions for summary judgment on all claims
arising from conduct occurring before October 22, 2008 (two
years before the Complaint was docketed) but denied summary
judgment on claims arising between that date and the filing of
the Complaint because Brown "alleged that Defendants continued
their harmful actions after October 22, 2008, causing him new
injuries and exacerbating his existing ones." <u>See</u> Order n.2
(Jan. 16, 2014), ECF No. 120. The Court also determined Brown
could not rely on the continuing violations doctrine to avoid a
strict application of the statute of limitations because he was
fully aware of the conditions allegedly harming him. <u>See</u> Order
n.2 (Jan. 16, 2014).

The parties then conducted additional discovery, which
included written interrogatories and Brown's deposition. In
2014, the Defendants filed the instant motions for summary
judgment. In 2015, the Court placed the matter in suspense until
Brown was prepared to answer the Motions.[5] <u>See</u> Order n.1 (Aug. 4,

---

[5]      Brown states that the case was stayed because the defendants "refused
to allow [him] access to his case files," but that he "was forced to reopen
the case because he is not expected to live much longer as a result of cancer

2015), ECF No. 180. Upon Brown's motion, the Court removed the case from suspense in 2019. See Order (July 16, 2019), ECF No. 183. Brown then responded to the motions for summary judgment. In February 2021, the Court ordered the Defendants to file supplemental briefing addressing any intervening changes in the law, inter alia. See Order (Feb. 25, 2021), ECF No. 209. The Defendants filed supplemental briefing, and Brown responded. Accordingly, the Defendants' motions for summary judgment are ripe for review.

## III. LEGAL STANDARD

Summary judgment is "appropriate only when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Physicians Healthsource, Inc. v. Cephalon, Inc., 954 F.3d 615, 618 (3d Cir. 2020) (quoting Fed. R. Civ. P. 56(a)). A fact is material "if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A factual dispute is genuine "if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. If the movant meets

---

that was contracted while under Defendants' care at SCI-Graterford." Pl.'s Suppl. Resp. Comm. Defs.' Mot. Summ. J. 4, ECF No. 206.

this obligation, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. At the summary judgment stage, the Court must view the facts "in the light most favorable to" the nonmoving party and "draw all reasonable inferences in favor" of that party. Young v. Martin, 801 F.3d 172, 174 (3d Cir. 2015).

"A document filed pro se is 'to be liberally construed,' . . . ." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## IV. DISCUSSION

The Commonwealth Defendants argue that, on the record before the Court, Brown cannot establish an Eighth Amendment claim for cruel and unusual conditions of confinement.[6] The

---

[6]     The Court notes that Brown's Complaint also brings a First Amendment retaliation claim against at least some of the Commonwealth Defendants. See Compl. ¶ 11, ECF No. 1-46 ("In most cases, at least two (2), Plaintiff was assigned to closed cells . . . by Defendant White, in retaliation because of grievances and complaint[s] filed against him and RHU/Prison staff.").

Although the Commonwealth Defendants acknowledge Brown's allegation that "guards and staff made the living conditions worse in retaliation for his filing grievances," including by turning up the heat, turning the heat off, and not having fans available, they did not move for summary judgment on the First Amendment claim. See Comm. Defs.' Mot. Summ. J. 7, ECF No. 157. The record indicates that the Commonwealth Defendants were aware of this claim, as their 2013 motion to dismiss argued, inter alia, that Brown failed to state a claim for First Amendment retaliation. See Comm. Defs.' Mot. Dismiss 17, ECF No. 12. In his supplemental response to the Commonwealth Defendants' motion for summary judgment, Brown noted that, in addition to his conditions of confinement claim, he "also alleged that Defendants retaliated against him and used the conditions as punishment." Pl.'s Suppl. Resp. Comm. Defs.' Mot. Summ. J. 13, ECF No. 206. Again, the Commonwealth Defendants did not address the First Amendment claim in their 2021 supplemental briefing. See Comm. Defs.' Suppl. Br., ECF No. 213.

The Court also notes that in their 2021 supplemental briefing, the Commonwealth Defendants raise the issue of exhaustion. See Comm. Defs.'

Medical Defendants argue that Brown failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), before filing suit. The Medical Defendants also argue that, on the record before the Court, Brown cannot establish a claim for inadequate medical treatment under the Eighth Amendment, a policy or custom that violated his constitutional rights, or a First Amendment retaliation claim.

The Court will address the Defendants' arguments in turn.

A.  **Commonwealth Defendants**

1.  Eighth Amendment Claim

The Commonwealth Defendants argue the record cannot support Brown's claim that his conditions of confinement violated the Eighth Amendment of the U.S. Constitution.

"The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 296–97 (1991) (citation omitted). To establish that prison conditions constitute cruel and unusual punishment, a plaintiff must satisfy a two-part test. First, he must show that the conditions to which he has been subjected are "sufficiently

_____

Suppl. Br. 3 n.2 ("If [Brown] did not submit a grievance, the claim should be dismissed as unexhausted."). The Commonwealth Defendants did not raise this argument in their summary judgment motion. See Comm. Defs.' Mot. Summ. J. Accordingly, the Court will not reach it here.

serious," amounting to a denial of "the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994). This is an objective inquiry. Id. Second, the plaintiff must show that the prison official acted with "deliberate indifference." Id. This is a subjective inquiry. Id. at 837.

### a.    Sufficiently Serious Deprivation

Conditions "alone or in combination" can amount to an objective deprivation of sufficient seriousness. Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 373 (3d Cir. 2019) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). When determining whether this element is satisfied, courts must consider "[t]he length of the inmate's exposure to the alleged unconstitutional conditions and the totality of the circumstances." McClure v. Haste, 820 F. App'x 125, 129 (3d Cir. 2020). The adequacy of ventilation is a relevant criterion. See, e.g., Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996) ("Relevant considerations include the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such as plumbing, ventilation, and showers.").

The Commonwealth Defendants appear to argue that no triable issue of fact exists on this question because "the record reflects that open and closed cells on the RHU were provided with sufficient ventilation." Comm. Defs.' Mot. Summ. J. 22, ECF No. 157. However, Brown offers conflicting evidence that the ventilation in his cells was insufficient, and that the condition "existed for years." Pl.'s Suppl. Resp. Comm. Defs.' Mot. Summ. J. 22, ECF No. 206. He points to, inter alia, the 2010 declarations of fellow prisoners Mark A. Dixon and Yassin H. Mohamad, who described inadequate ventilation on J-Block. Pl.'s Exs. AA-BB, ECF No. 202.

On the record before the Court, a reasonable juror considering the totality of the circumstances could conclude that Brown was deprived of adequate ventilation for an extended period of time. Such a deprivation could be sufficiently serious as to "amount[] to the denial of the minimal civilized measure of life's necessities." See Farmer, 511 U.S. at 834; cf. Jones v. Sec'y Pa. Dep't of Corr., 589 F. App'x 591, 593 (3d Cir. 2014) (affirming grant of summary judgment to defendants on inadequate ventilation claim where "[t]he record evidence demonstrate[d] that, despite the tape on the sides and top of

his door, [the plaintiff] had ample ventilation and fresh air in his cell.").[7]

Accordingly, a genuine issue of material fact exists on this issue.

### b.    Deliberate Indifference

To prove that an official acted with deliberate indifference to an inmate's health or safety, it is insufficient for the official simply to be "aware of facts from which the inference can be drawn that a substantial risk of serious harm exists." Farmer, 511 U.S. at 837. Instead, the official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. A court "may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." Hope v. Pelzer, 536 U.S. 730, 738 (2002) (citing Farmer, 511 U.S. at 842).

The Commonwealth Defendants argue no record evidence indicates that they "were aware of any serious medical problems

---

[7]     Although the Commonwealth Defendants highlight that Brown has not offered expert testimony to support his allegation that the ventilation conditions caused or exacerbated his respiratory issues, they do not challenge the lack of expert testimony on the air quality or ventilation conditions. See Comm. Defs.' Mot. Summ. J. 21, ECF No. 157. Whether expert testimony is needed for Brown to carry his burden concerning the quality and the amount of available air may need to be decided by a motion in limine before trial.

related to the ventilation conditions" or "deliberately continued to ignore maintenance of the ventilation system." Comm. Defs.' Mot. Summ. J. 21-22, ECF No. 157.[8] For his part, Brown points to record evidence that supports a finding that the ventilation conditions caused him harm, and that at least some of the Commonwealth Defendants were deliberately indifferent to such harm. For example, he points to requests he submitted to prison staff within the two-year window before he filed the instant action in which he reported poor circulation in his cell and stated that the conditions were adversely affecting his health. Pl.'s Exs. E-G, ECF No. 194. Brown also points to the multiple grievances in which he stated that he believed the ventilation conditions to be causing him harm. See supra Section II.A.

Construed in the light most favorable to Brown, this record evidence reflects triable issues as to whether Brown suffered harm as a result of ventilation conditions and whether at least some of the Commonwealth Defendants were deliberately indifferent to such harm.

Because Brown has pointed to genuine issues of material fact with respect to both prongs of the conditions of

---

[8]    The Commonwealth Defendants do not distinguish between and among themselves in their briefing, and they do not address the possibility that the record supports a finding that some, but not all, of the Commonwealth Defendants acted with deliberate indifference.

confinement analysis, the Commonwealth Defendants are not entitled to summary judgment on Brown's Eighth Amendment claim.

### B.  **Medical Defendants**

#### 1.  Exhaustion

The Court turns next to the Medical Defendants, who first argue they are entitled to summary judgment because Brown has not exhausted his administrative remedies as required by the PLRA, which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)). The Pennsylvania Department of Corrections "has a grievance policy involving a three-step process that an inmate must fully complete in order to properly exhaust his administrative remedies under the PLRA," which includes "an initial written grievance, an appeal to the Facility Manager, and a final written appeal to the Secretary's

Office of Inmate Grievances and Appeal." Jackson v. Carter, 813
F. App'x 820, 823 (3d Cir. 2020) (citing Commonwealth of
Pennsylvania, Department of Corrections, Inmate Grievance
System, Policy No. DC-ADM 804 (effective Feb. 16, 2016)).

"[F]ailure to exhaust is an affirmative defense under the
PLRA," not a pleading requirement for the plaintiff. See Jones,
549 U.S. at 216. "Furthermore, the defendant must prove that the
prisoner-plaintiff failed to exhaust each of his claims. There
is no 'total exhaustion' rule permitting dismissal of an entire
action because of one unexhausted claim." Small v. Camden Cnty.,
728 F.3d 265, 269 (3d Cir. 2013) (citing Jones, 549 U.S. at 220-
24).

Here, the Medical Defendants argue that Brown "has
submitted numerous grievances over the years but none that named
PHS or Dr. Arias related to medical care at issue in the two
year time period preceding the Complaint that were exhausted to
final review." Med. Defs.' Mot. Summ. J. 7, ECF No. 154-2.
Although the Medical Defendants attached several of Brown's
grievances as exhibits to their motion for summary judgment,
they did not point to a declaration from a prison official or
any other record evidence indicating they performed an
exhaustive search to identify all applicable grievances. See
Med. Defs.' Mot. Summ. J. 7.

In its order requiring supplemental briefing, the Court instructed the Medical Defendants to address "the evidence on which they rely for their contention that Plaintiff has failed to exhaust his administrative remedies." Order (Feb. 25, 2021), ECF No. 209. In response, the Medical Defendants state that they "cannot prove a negative" and aver that there is no record evidence that any grievance naming Dr. Arias was exhausted to final review. See Med. Defs.' Suppl. Br. 3, ECF No. 212. They argue "[t]he grievance documentation [Brown] produced or even referenced does not establish exhaustion of his administrative remedies." Med. Defs.' Suppl. Br. 4.

The Court concludes that the Medical Defendants have not satisfied their burden of establishing that Brown failed to exhaust his administrative remedies. See Ray v. Kertes, 130 F. App'x 541, 543 (3d Cir. 2005) (concluding that a staff member's declaration that she had searched a database and determined the plaintiff did not exhaust his grievance rights did not "constitute a factual report describing the steps [the plaintiff] did or did not take to exhaust his grievances" and therefore was insufficient to establish his failure to exhaust); cf. Washington-El v. Beard, 562 F. App'x 61, 64 (3d Cir. 2014) (concluding that an "affidavit prepared by the DOC custodian of inmate grievance records" indicating the number of grievances the plaintiff appealed to final review supported a finding that

the plaintiff failed to exhaust his administrative remedies).
Therefore, the Medical Defendants are not entitled to summary
judgment on this ground.

### 2. Eighth Amendment Claim

Next, the Medical Defendants argue Brown's Eighth Amendment
claim "should not reach a jury because there is no medical
expert testimony to prove that Dr. Arias or PHS caused any
actual harm." Med. Defs.' Mot. Summ. J. 7, ECF No. 154-2. They
also argue Brown cannot establish that Arias and PHS "knew of,
yet disregarded, an excessive risk" to his health and safety.
Med. Defs.' Mot. Summ. J. 8.

"[P]rison officials violate the Eighth Amendment when they
act deliberately indifferent to a prisoner's serious medical
needs by 'intentionally denying or delaying access to medical
care or interfering with the treatment once prescribed.'"
Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017)
(quoting Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). "In
order to sustain this constitutional claim under 42 U.S.C. §
1983, a plaintiff must make (1) a subjective showing that 'the
defendants were deliberately indifferent to [his or her] medical
needs' and (2) an objective showing that 'those needs were
serious.'" Id. (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d
Cir. 1999)).

###### a. Deliberate Indifference

In Pearson v. Prison Health Service, the Third Circuit
considered, as an issue of first impression, "when medical
expert testimony may be necessary to create a triable issue on
the subjective prong of a deliberate indifference case." 850
F.3d at 535. In its analysis, the court recognized "a critical
distinction" between cases alleging "inadequate medical
treatment" and those alleging "a complete denial of medical
care." Id. (quoting United States ex rel. Walker v. Fayette
Cnty., 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

As to adequacy of care cases, the Third Circuit held that
"medical expert testimony may be necessary . . . when the
propriety of a particular diagnosis or course of treatment would
not be apparent to a layperson." Id. at 537. But as to a
plaintiff's claims that he was delayed or denied medical
treatment for a non-medical reason, the court determined that
"requiring additional extrinsic proof" in the form of medical
expert testimony "would be inappropriate given the subjective
nature of scienter and our case law on deliberate indifference."
Id. In such cases, "[a]ll that is needed is for the surrounding
circumstances to be sufficient to permit a reasonable jury to
find that the delay or denial was motivated by non-medical
factors." Id.

Brown's claim against the Medical Defendants appears to be one for denial of care, rather than inadequate medical treatment. See Compl. ¶ 52, ECF No. 1-46 ("Defendants PHS [and] Arias . . . have outright denied Plaintiff's attempts to obtain medical care from his suffering, or relief from the conditions, and have fail[ed] to conduct any medical tests on him, or refer him to a specialist or someone capable of providing adequate care."); see also Pl.'s Resp. Med. Defs.' Suppl. Br. 9 ("The Complaint in this instant matter clearly refl[e]cts claims against these two (2) particular Defendants that allege denial of medical care, and certainly not inadequate medical care."). Therefore, medical expert testimony is not necessary to create a triable issue of fact.

Brown has pointed to surrounding circumstances sufficient for a reasonable jury to find that the denial of his medical care was motivated by non-medical factors—i.e., retaliation for making complaints. Brown points to a letter he wrote to Dr. Arias on March 2, 2009, which states: "I have filed numerous prison Grievances and Request Slips seeking medical care for my problems, including breathing problems, coughing up stuff during the day, . . . liver pain, and headaches. . . . Please check my files and come by to see me the next time you are down this way." Pl.'s Suppl. Resp. Med. Defs.' Mot. Summ. J. Ex. 2, ECF No. 207. He also points to a letter he wrote to the "Chief

Officer" of PHS on December 1, 2008, which states: "I have
repeatedly tried to get medical care from your staff here at
SCI-Graterford, that is caused by the toxic conditions in the
prison hold, including dust [and] dirt." Pl.'s Suppl. Resp. Med.
Defs.' Mot. Summ. J. Ex. 1. Brown also states in the letter that
he has "experienced breathing problems, headaches, watery eyes,
voice problems, and others, yet [PHS] staff has simply refused
to even conduct tests to help provide the proper medical care."
Pl.'s Suppl. Resp. Med. Defs.' Mot. Summ. J. Ex. 1. He argues
that, notwithstanding these complaints, Arias and PHS did not
provide the necessary medical care.

For the reasons set forth above, Brown has presented
sufficient evidence from which a reasonable jury could find that
Arias and PHS were deliberately indifferent to his medical
needs.[9]

### b. Serious Need

On the issue of whether medical expert testimony is
necessary to create a genuine dispute that a prisoner's medical
needs are serious, the Third Circuit has held that "a district
court may properly require expert medical opinions when, '[a]s

---

[9]     The Medical Defendants also point to record evidence of Brown's
refusing medical treatment on several occasions and aver that this refusal
undermines Brown's claim that PHS and/or Arias acted with deliberate
indifference. Although PHS and Arias are free to pursue this argument before
the factfinder, Brown has pointed to countervailing record evidence
supporting his claim that he was denied medical care. The issue is therefore
inappropriate for resolution at the summary judgment stage.

laymen, the jury would not be in a position to decide whether any of the conditions described by plaintiffs could be classified as "serious."'" Pearson, 850 F.3d at 535 (alteration in original) (quoting Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987)). However, "expert testimony is not necessarily required to establish the existence of a serious medical need," and "[o]ther forms of extrinsic proof—e.g., medical records, photographs, etc.—may suffice in some cases." Brightwell v. Lehman, 637 F.3d 187, 194 n.8 (3d Cir. 2011).

Here, the record evidence includes Brown's deposition testimony about his breathing problems, the grievance requests in which he reported respiratory issues and coughing up blood, and medical progress notes from October 2010 in which medical staff recorded Brown's complaints of breathing issues. See Med. Defs.' Mot. Summ J. Ex. 8, at 39–40, ECF No. 154-12. Brown also points to his COPD diagnosis. Even without medical expert testimony, a reasonable jury considering this record evidence could conclude that Brown had a serious medical need.

Because Brown has pointed to triable issues of fact as to both prongs of the Eighth Amendment analysis, the Medical Defendants are not entitled to summary judgment on this claim.

### 3. Municipal Liability

The Medical Defendants next argue that "it is not clear whether Mr. Brown is attempting to pursue a theory that policies

or customs created a constitutional violation," but that if the Court does interpret such a claim, they are entitled to summary judgment because Brown has failed to establish any policy or custom violating his constitutional rights. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978).

Brown appears to argue both that Arias and PHS are directly liable for his alleged constitutional deprivations and that PHS is liable for failure to properly train and supervise its staff. See Pl.'s Suppl. Resp. Med. Defs.' Mot. Summ. J. 4, ECF No. 207. However, to the extent that Brown seeks to establish Monell liability under a failure-to-train theory, he does not point to record evidence regarding medical staff training (or lack thereof), and his principal allegation appears to be that Arias and PHS directly violated his constitutional rights by denying him medical care. See supra Section IV.B.2.[10]

Accordingly, Brown cannot rely on Monell liability to establish an Eighth Amendment claim against the Medical Defendants.

---

[10]     Nor has Brown submitted an affidavit explaining that he is unable to present facts essential to justify his opposition to this aspect of the Medical Defendants' summary judgment motion. See Fed. R. Civ. P 56(d). The Court previously informed Brown that if he was unable to oppose the instant motions without further information, the Court may order additional discovery. See Order (Mar. 25, 2014), ECF No. 142.

4.   First Amendment Claim

Finally, the Medical Defendants argue that, on the record before the Court, Brown cannot prevail on his First Amendment retaliation claim.

To establish a prima facie case of First Amendment retaliation, a prisoner must demonstrate that: (1) "the conduct which led to the . . . retaliation was constitutionally protected"; (2) "he suffered some 'adverse action' at the hands of the prison officials"; and there was (3) "'a causal link between the exercise of his constitutional rights and the adverse action taken against him,' or more specifically, 'that his constitutionally protected conduct was "a substantial or motivating factor" in the decision' to take that action." Oliver v. Roquet, 858 F.3d 180, 190 (3d Cir. 2017) (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)).

A plaintiff can establish the third element with evidence of "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Watson v. Rozum, 834 F.3d 417, 424 (3d Cir. 2016). "'[W]here the temporal proximity is not so close as to be "unduly suggestive,"' the appropriate test is 'timing plus other evidence.'" Id. at 424 (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)).

"[E]ven if [the plaintiff] establishes a prima facie case, prison officials may still prevail if they establish that 'they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'" Id. at 422 (quoting Rauser, 241 F.3d at 334).

Brown easily satisfies the first prong of the prima facie case, as filing grievances is a constitutionally protected activity. See, e.g., Coit v. Garman, 812 F. App'x 83, 86 (3d Cir. 2020).

Brown has pointed to a triable issue of fact as to the second prong, as a reasonable jury considering the record before the Court could conclude that the Medical Defendants refused Brown treatment, see supra Section IV.B.2, constituting an adverse action.

Finally, Brown has also pointed to a triable issue on the third prong, as a reasonable jury could conclude that the Defendants' "pattern of antagonism coupled with timing" establishes "a causal link." See Watson, 834 F.3d at 424. Brown filed at least eight grievances during the applicable timeframe, see supra Section II.A, and he argues the Medical Defendants repeatedly denied him the care he required during this window.

Therefore, the Medical Defendants are not entitled to summary judgment on Brown's First Amendment claim.

## V.    CONCLUSION

For the foregoing reasons, the Court will deny the Commonwealth Defendants' motion for summary judgment. The Court will grant the Medical Defendants' motion for summary judgment on the issue of <u>Monell</u> liability only and will deny the motion as to all remaining issues.